UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| LATOYA A.,<br><br>          Plaintiff,<br><br>     v.<br><br>SAN FRANCISCO UNIFIED SCHOOL DISTRICT,<br><br>          Defendant. | Case No. 3:15-cv-04311-LB<br><br>**ORDER GRANTING IN PART LATOYA A.'S MOTION FOR SUMMARY JUDGMENT**<br><br>[Re: ECF No. 6] |

## INTRODUCTION

The plaintiff LaToya A. is the parent of her minor son I.A. and on his behalf filed a request for a due-process hearing under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 *et seq.*, naming the defendant San Francisco Unified School District ("District"). (Complaint, ECF No. 1, ¶¶ 1-2.)[1] The Administrative Law Judge ("ALJ") held a hearing on the request and then ruled in LaToya A.'s favor on three issues and in the District's favor on one issue. (*Id.* ¶¶ 4-5.) LaToya A. now seeks, by way of a summary-judgment motion in federal court, reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B). (Motion, ECF No. 6.) The court grants in part LaToya A.'s motion and awards her reasonable attorneys' fees in the amount of $57,396.

---

[1] Record citations are to documents in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the tops of the documents.

**STATEMENT**

Before his enrollment in the District, I.A. attended transitional kindergarten in the West Contra Costa County School District during the 2012-13 school year and kindergarten in the Antioch Unified School District during the 2013-14 school year. (ALJ Decision, ECF No. 6-1 at 4.) During those years, I.A. lived with multiple caretakers and missed large amounts of school. (*See id.*) He did not adapt well to school and exhibited troubled behaviors. (*See id.*) In December 2013, I.A. was diagnosed with reactive attachment disorder and post-traumatic stress disorder. (*Id.*) Antioch twice assessed I.A. for special education, but both times it found him ineligible, in part because it could not eliminate its "optional theory" that his unstable home life (as opposed to his reactive attachment disorder and post-traumatic stress disorder) caused his behavior problems. (*Id.* at 4-5.) Antioch did, however, find him qualified for a "Section 504" plan under which he received small-class instruction at a nonpublic school with, among other things, mental health and behavioral services. (*Id.* at 5.)

On September 22, 2014, LaToya A. enrolled I.A. in first grade in the District. (*Id.*) Based on the enrollment meeting, I.A.'s enrollment paperwork, and email correspondence the next day, the District knew, by September 23, 2014, about I.A.'s prior Section 504 plan and his particular needs. (*Id.*) Recognizing those needs, the District decided that I.A. would attend Flynn Elementary School, which specialized in meeting needs of students with social-emotional, mental health, and behavioral issues. (*Id.* at 6.) Through Flynn's Success, Opportunity, Achievement, and Resiliency Academy ("SOAR"), I.A. received small-group instruction in a general classroom with trained behavioral aides and programs designed to improve behavior. (*See id.* at 6-7.) The District also assigned a special education teacher to be his case manager. (*Id.* at 6.)

On October 22, 2014, the District convened a Section 504 team meeting to review I.A.'s needs, placement, and progress. Numerous school officials attended the meeting, as did LaToya A and I.A.'s juvenile dependency attorney, Elisa Mollick, and I.A.'s social worker, Chabrika Bowers. (*Id.* at 5, 8.) The District adopted a written Section 504 plan that continued much of the instruction and services that I.A. had already been receiving. (*See id.* at 9.) During the meeting, Ms. Mollick and Ms. Bowers asked the District to assess I.A. for special education. (*Id.*) The

United States District Court
Northern District of California

District saw no need to do so because I.A. 1) had been subjected to several assessments since February 2014 and found ineligible, 2) needed more time to settle in and stabilize so any future assessment would be a valid reflection of his functioning rather than a reflection of his multiple transitions, and 3) its Section 504 plan was working and I.A. was making progress. (*Id.*) In essence, the District decided to take a wait-and-see approach. (*Id.*)

On December 3, 2014, the District received LaToya A.'s request for a complete copy of I.A.'s educational file. (*Id.* at 10.) The District responded and provided documents in December 2014 and January 2015. (*Id.* at 10-11.)

On December 12, 2014, LaToya A., through counsel and on I.A.'s behalf, filed with the Office of Administrative Hearings a request for a due-process hearing. (Complaint, ECF No. 1, ¶ 2; Moore Decl., ECF No. 24-5 at 2, ¶ 6 & Ex. 1.) She filed it against the District as well as against the West Contra Costa County School District and the Antioch Unified School District. (Moore Decl., ECF No. 24-5 at 2, ¶ 6 & Ex. 1.) LaToya A. settled with the West Contra Costa County School District and the Antioch Unified School District in January 2015, leaving only the District as a defendant to the administrative action. (*Id.* at 2, ¶ 7.)

The District treated LaToya A.'s request as a request for a special-education assessment, and it provided her with an assessment plan on December 23, 2014. (ALJ Decision, ECF No. 6-1 at 11.) LaToya A. consented to the plan on February 9, 2015. (*Id.*) Under this plan, the District assessed I.A. in March and April 2015. (*Id.* at 11-12.) On April 9, 2015, the District found I.A. eligible for special education. (*Id.* at 12.) The Individualized Education Program ("IEP") the District proposed, and which LaToya A. accepted, offered I.A. the same placement and specialized instruction and virtually the same related services he had been receiving under his Section 504 plan. (*Id.* at 15.)

On April 16, 2015, the District made a written settlement offer to LaToya A. under 20 U.S.C. § 1415(i)(3)(D). (Moore Decl., ECF No. 24-5 at 4, ¶ 14 & Ex. 3.) The offer was this: "In consideration for a complete dismissal of the District from [the due-process administrative action], with prejudice, and release and waiver of all claims therein," the District would provide "reimbursement for $1,000 for expenses in the following areas: attorney's fees, evaluation

United States District Court
Northern District of California

1  expenses not covered by other agencies, tutoring, and/or mental health costs." (*Id.*, Ex. 3.) LaToya

2  A. rejected the offer on April 29, 2015. (*Id.* at 4, ¶ 15 & Ex. 4.)

3     LaToya A.'s due-process complaint was heard by an ALJ on May 6, May 7, and May 12,

4  2015. (ALJ Decision, ECF No. 6-1 at 2.) The ALJ issued a written ruling on July 20, 2015. (*See*

5  *generally id.*) The ALJ described the four issues in the proceeding as follows:

6     1. Did the District fail in its child-find obligation and deny I.A. a free appropriate public

7  education ("FAPE") by failing to refer him for a special-education assessment between September

8  2014 and February 2015?

9     2. From September 2014 to April 9, 2015, did the District deny I.A. a FAPE by failing to find

10  him eligible for special-education and related services?

11    3. From September 2014 to April 9, 2015, did the District deny I.A. a FAPE by failing to offer

12  him a special-education program designed to meet his unique and individual needs?

13    4. Did the District deny I.A. a FAPE by violating LaToya A.'s procedural rights by failing to

14  provide a full and complete copy of I.A.'s educational records pursuant to her request on

15  December 2, 2014?

16  (*Id.* at 3.)

17    The ALJ ruled in LaToya A.'s favor on the first three issues. (*Id.*, ECF No. 6-1 at 18 & ECF

18  No. 6-2 at 1-17.) She found that the District should have referred I.A. for a special-education

19  assessment after the October 22, 2014, Section 504 meeting, and, because it did not, it failed to

20  timely convene an IEP meeting, and failed to timely offer an IEP to I.A. (*See id.*) The ALJ ruled

21  that the District committed IDEA procedural violations that denied LaToya A. the right to

22  participate in the decision-making process and denied I.A. a FAPE from October 22, 2014 to April

23  9, 2015. (*See id.*) The ALJ also found that that the procedural violations had been cured and did

24  not deprive I.A. of any educational benefit. (*See id.*) The ALJ ruled in the District's favor on the

25  fourth issue, finding no procedural violation and no denial of a FAPE. (*Id.* at 17-19.)

26    After the hearing, the ALJ allowed the parties to submit closing briefs, which they did. (*Id.*,

27  ECF No. 6-1 at 2.)

28    As remedies, LaToya A. requested "compensatory education in the form of academic tutoring

United States District Court
Northern District of California

ORDER (No. 3:15-cv-04311-LB)          4

and occupational therapy consult services" and "staff training." (*Id.*, ECF No. 6-2 at 19.) The ALJ's remedy was its order to the District to "ensure that all of its special education and general education teachers, case managers, and school psychologists working at or supervising staff at Flynn receive four hours of training on the following: 1) child find duties and when to refer students for an eligibility assessment, particularly those receiving Section 504 services; and 2) the importance of parental participation." (*Id.* at 20-21.) The ALJ ordered that this training "be provided by a credentialed special education administrator, with at least five years of special education administration experience, who is not employed by [the District]." (*Id.* at 21.) The ALJ further ordered the District to "provide Student with a copy of the training agenda, the presenter's curriculum vitae, and the sign-in roster within 30 days of completion of this training." (*Id.*) The ALJ denied all other requested relief. (*Id.*)

On September 21, 2015, LaToya A. filed her federal complaint against the District to recover her attorneys' fees under 20 U.S.C. § 1415(i)(3)(B). (Complaint, ECF No. 1.) In her complaint, she sought attorneys' fees and costs of $78,349.05 plus additional attorneys' fees and costs incurred in connection with this action. (*Id.* at 6.) After serving the District, she filed a summary-judgment motion. (Motion, ECF No. 6; Notice of Motion, ECF No. 22.) In her motion, she asked for the fees and costs of $78,349.05; in her reply she asks for an additional $6,622.50 for attorneys' fees and costs incurred since she filed her complaint, for a total demand of $84,971.55. (Motion, ECF No. 6 at 1; Reply, ECF No. 26 at 9.) The District opposes the motion. (Opposition, ECF No. 24.) The court held a hearing on the motion on January 28, 2016. (1/28/2016 Minute Order, ECF No. 31.)

### SUMMARY JUDGMENT

The court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Material facts are those that may affect the outcome of the case. *Anderson*, 477 U.S. at 248. A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49.

The party moving for summary judgment bears the initial burden of informing the court of the basis for the motion, and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To meet its burden, "the moving party must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000); *see Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'").

If the moving party meets its initial burden, then the burden shifts to the non-moving party to produce evidence supporting its claims or defenses. *Nissan Fire & Marine*, 210 F.3d at 1103. The non-moving party may not rest upon mere allegations or denials of the adverse party's evidence, but instead must produce admissible evidence that shows there is a genuine issue of material fact for trial. *See Devereaux*, 263 F.3d at 1076. If the non-moving party does not produce evidence to show a genuine issue of material fact, the moving party is entitled to summary judgment. *See Celotex*, 477 U.S. at 323.

In ruling on a motion for summary judgment, inferences drawn from the underlying facts are viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

### 1. LaToya A. Is A Prevailing Party

In any action or proceeding brought under IDEA, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to a prevailing party who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B). "A prevailing party is one who 'succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing the suit.'" *Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 825 (9th Cir. 2007) (quoting *Parents of*

United States District Court
Northern District of California

*Student W. v. Puyallup Sch. Dist., No. 3*, 31 F.3d 1489, 1498 (9th Cir. 1994)). "The success must materially alter the parties' legal relationship, cannot be *de minimis* and must be causally linked to the litigation brought." *Id.* (emphasis added) (citing *Parents of Student W.*, 31 F.3d at 1498, and *Park v. Anaheim Union Sch. Dist.*, 464 F.3d 1025, 1034-37 (9th Cir. 2006)). *See also Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989) (discussing 42 U.S.C. § 1988) ("The touchstone of the prevailing party inquiry must be the material alteration of the legal relationship of the parties in a manner which Congress sought to promote in the fee statute."); *Weissburg v. Lancaster Sch. Dist.*, 591 F.3d 1255, 1259 (9th Cir. 2010). The material alteration in the parties' legal relationship must be "judicially sanctioned," *Shapiro ex rel. Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004), and the judgment must give the parent or student "the ability to 'require[ ] the [school district] to do something [it] otherwise would not have to do," *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1233 (9th Cir. 2007) (quoting *Fischer v. SJB-P.D., Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000)).

The District argues that LaToya A. is not a prevailing party under the standard set forth above and thus cannot obtain attorneys' fees and costs at all. (Opposition, ECF No. 24 at 9-12.) It says that although LaToya A. "technically succeeded in establishing that [it] committed some procedural violations," the ALJ nevertheless found that I.A. suffered no harm and denied all of the relief she sought. (*Id.* at 10.) "Instead," it maintains, LaToya A. recovered only "some generalized staff training that was not specifically geared towards [I.A.'s] needs, was not included in his IEP, and did not result in any change to his educational program, placement or services." (*Id.* at 11.)

It is true that in many IDEA attorneys' fees cases, the prevailing parties who were entitled to fees had been awarded remedies that directly benefitted them or their children. *See*, *e.g.*, *Weissburg*, 591 F.3d at 1260 (ALJ ordered the school district to change the student's disability classification); *Van Duyn*, 502 F.3d at 825-26 (ALJ ordered the school district to provide the student with an additional five hours of math instruction per week); *Shapiro*, 374 F.3d at 865 (money damages awarded to the parent). But whether the relief directly, rather than indirectly, benefits the parent or student is not the standard. The standard is whether the parent or student

succeeded on a significant issue, achieved some of the benefit sought, and the awarded relief materially alters the legal relationship between the parent or student, on one hand, and the school district, on the other. The standard has been met. Here, the ALJ ruled in LaToya A.'s favor on three of four issues, found that the District denied I.A. a FAPE, and directed the District to provide four hours of training to numerous persons working at I.A.'s school about issues raised by LaToya A.'s request and to provide LaToya A. with documentation about that training. Whether I.A. was denied a FAPE was a significant issue, and LaToya A. in part sought staff training, which is what the ALJ ordered. In the absence of this ruling, the District would not have to conduct any training or provide LaToya A. with anything, and LaToya A. would not have the right to enforce seek enforcement of the order.

*D.F. v. Sacramento City Unified Sch. Dist.*, Civ. No. 2:13-1887 WBS CKD, 2014 WL 2526811 (E.D. Cal. June 4, 2014), which the District describes as "virtually indistinguishable" from this case, does not change the decision. (*See* Opposition, ECF No. 24 at 11-12.) In *D.F.*, the student plaintiff filed a due-process complaint, and the ALJ ruled that the plaintiff prevailed on part of two issues because the defendant school district committed two procedural violations. 2014 WL 2526811 at *1. The ALJ, however, also found that the student did not suffer any loss of educational benefit as a result of the procedural violations. *Id.* The ALJ therefore denied all of the student's requests for relief, which included independent educational evaluations, compensatory education in areas of need, non-public school placement, and transportation costs. *Id.* at *1-2.

When the student thereafter filed a complaint in federal court and sought attorneys' fees under 20 U.S.C. § 1415(i)(3)(B), the district court ruled that the student was not a prevailing party. *Id.* at *2-3. It so ruled because the student obtained none of the relief sought and the ALJ "did not order [the school district] to take any action at all" and "did not order *any* change in the legal obligations of [the school district] toward [the student], much less a 'significant change.'" *Id.* (italics in original) (quoting *Park*, 464 F.3d at 1035). This fact—that the ALJ in *D.F.* ordered no relief, to anybody—materially distinguishes that case from ours. As described above, the ALJ here ordered the District to train many of its employees and to provide LaToya A. with documentation about that training. LaToya A. is a prevailing party.

United States District Court
Northern District of California

**2.  The District's Settlement Offer Does Not Bar the Recovery of Attorneys' Fees**

IDEA contains a provision barring the recovery of attorneys' fees and related costs that operates similarly to Federal Rule of Civil Procedure 68. *See T.B. ex rel. Brenneise v. San Diego Unified Sch. Dist.*, 806 F.3d 451, 475-76 (9th Cir. 2015). That provision provides that a court may not award attorneys' fees or order reimbursement of related costs in any action or proceeding under IDEA for services performed subsequent to the time of a written offer of settlement to a parent if: (1) the offer is made within the time prescribed by Federal Rule of Civil Procedure 68 or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins; (2) the parent does not accept the offer within 10 days; and (3) the court finds that the relief finally obtained by the parent is not more favorable to the parent than the settlement offer. 20 U.S.C. § 1415(i)(3)(D)(i). Even if these requirements are met, however, another IDEA provision provides that the court still may award attorneys' fees and related costs to a parent who is a prevailing party if the parent was substantially justified in rejecting the settlement offer. 20 U.S.C. § 1415(i)(3)(E).

The District argues that 20 U.S.C. § 1415(i)(3)(D)(i) bars LaToya A. from recovering attorneys' fees and costs incurred after April 16, 2015. (Motion, ECF No. 24 at 24-26.) It is undisputed that the District made a written settlement offer to LaToya A. on April 16, 2015, which was more than ten days before the hearing before the ALJ, and that LaToya A. did not accept the offer. The issue, then, is whether the District's settlement offer was more favorable to LaToya A. than the relief she obtained from the ALJ.

Again, the settlement offer was this: "In consideration for a complete dismissal of the District from [the due-process administrative action], with prejudice, and release and waiver of all claims therein," the District would provide "reimbursement for $1,000 for expenses in the following areas: attorney's fees, evaluation expenses not covered by other agencies, tutoring, and/or mental health costs." (Moore Decl., ECF No. 24-5, Ex. 3.) And again, the ALJ awarded he following relief: that the District "ensure that all of its special education and general education teachers, case managers, and school psychologists working at or supervising staff at Flynn receive four hours of training on the following: 1) child find duties and when to refer students for an eligibility

United States District Court
Northern District of California

1     assessment, particularly those receiving Section 504 services; and 2) the importance of parental

2     participation"; that this training "be provided by a credentialed special education administrator,

3     with at least five years of special education administration experience, who is not employed by

4     [the District]"; and that the District "provide Student with a copy of the training agenda, the

5     presenter's curriculum vitae, and the sign-in roster within 30 days of completion of this training."

6     (ALJ Decision, ECF No. 6-2 at 20-21.)

7          It is the District's burden to show that its settlement offer was more favorable to LaToya A.

8     than the relief she obtained from the ALJ. *See Hawkins v. Berkeley Unified Sch. Dist.*, No. C-07-

9     4206 EMC, 2008 U.S. Dist. LEXIS 94673, at *60 (N.D. Cal. Nov. 20, 2008) (concluding that the

10    district has the burden to show that the settlement offer was more favorable that the relief finally

11    obtained, just like in the Rule 68 context). The District has not met its burden. First, its $1,000

12    offer was small, especially in relation to the roughly $23,000 in attorneys' fees and costs that

13    LaToya A. had incurred by the time the offer was made. (*See* Hodes Decl., ECF No. 6, ¶ 11.) The

14    District posits that LaToya A. was not entitled to $23,000 in attorneys' fees and costs by this time

15    and in fact she is not entitled to any now. (*See* Opposition, ECF No. 24 at 26.) But as explained

16    above, LaToya A. was a prevailing party entitled to attorneys' fees and costs, and as explained

17    below, she is entitled to more than $1,000. Second, the District highlights that it was not ordered

18    to evaluate, tutor, or provide additional mental health services to I.A. or to reimburse LaToya A.

19    for educational expenses, so "in terms of actual relief, [LaToya A.] did not do better than what was

20    offered." (*Id.* at 24.) LaToya A.'s "actual relief," however, included the requirement that District

21    employees be trained and that the District provide her documentation about that training. The

22    court cannot say that this relief was of less value to LaToya A. than $1,000. The District's

23    statement that LaToya A. was "totally unmoved by the remedy she obtained" because she never

24    received its notification that the District had done the training and did not inquire about the

25    training until November 2015 is unpersuasive and speculative.

26         Finally, the District also says that it made additional settlement offers to LaToya A. on July 27,

27    2015 and August 10, 2015—after the ALJ issued her decision—and on November 30, 2015 and

28    December 16, 2015—after LaToya A. filed her complaint in this court seeking fees and costs—

1   and argues that these offers also trigger the statutory bar found at 20 U.S.C. § 1415(i)(3)(D)(i). (*Id.*

2   at 26-27.) But it cites no authority for its assumption that the statute is triggered by settlement

3   offers made after an order providing substantive relief on a parent's claims, and the three cases it

4   cites regarding the statutory bar all involve settlement offers made before the substantive relief

5   was ordered or agreed to. (*See id.* at 24-27 (citing *Gary G. v. El Paso Indep. Sch. Dist.*, 632 F.3d

6   201, 204-05 (5th Cir. 2011); *Dell v. Bd. of Educ.*, 918 F. Supp. 212, 214 (N.D. Ill. 1995); *Mr. L. &*

7   *Mrs. L. ex rel. Matthew L. v. Woonsocket Educ. Dep't*, 793 F. Supp 41, 43 (D.R.I. 1992)).) The

8   District has not met its burden to show that the statutory bar applies to these subsequent settlement

9   offers.

10   **3.   Reasonable Attorneys' Fees and Costs**

11       Because LaToya A. is a prevailing party who is the parent of a child with a disability and

12   IDEA's statutory bar does not apply, the court, in its discretion, may award reasonable attorneys'

13   fees and costs to her. 20 U.S.C. § 1415(i)(3)(B).

14       "The most useful starting point for determining the amount of a reasonable fee is the number

15   of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v.*

16   *Eckerhart*, 461 U.S. 424, 433 (1983). The product of this calculation is typically referred to as the

17   "lodestar." *Schwarz v. Sec. of Health & Human Servs.*, 73 F.3d 895, 901 (9th Cir. 1995). "[T]he

18   fee applicant bears the burden of establishing entitlement to an award and documenting the

19   appropriate hours expended and hourly rates." *Hensley*, 461 U.S. at 437.

20       **3.1 Number of Hours Reasonably Expended**

21       "The fee applicant bears the burden of documenting the appropriate hours expended in the

22   litigation and must submit evidence in support of those hours worked." *Gates v. Deukmejian*, 987

23   F.2d 1392, 1397 (9th Cir. 1992) (citing *Hensley*, 461 U.S. at 433, 437). "The party opposing the

24   fee application has a burden of rebuttal that requires submission of evidence to the district court

25   challenging the accuracy and reasonableness of the hours charged or the facts asserted by the

26   prevailing party in its submitted affidavits." *Id.* at 1397-98 (citing *Blum v. Stenson*, 465 U.S. 886,

27   892 n.5 (1984), and *Toussaint v. McCarthy*, 826 F.2d 901, 904 (9th Cir. 1987)). "Where the

28   documentation of hours is inadequate, the district court may reduce the award accordingly."

United States District Court
Northern District of California

United States District Court
Northern District of California

1    *Hensley*, 461 U.S. at 433. In addition, IDEA requires that "whenever the court finds that . . . the

2    time spent and legal services furnished were excessive considering the nature of the action or

3    proceeding[,] . . . the court shall reduce, accordingly, the amount of the attorneys' fees awarded

4    under this section." 20 U.S.C. § 1415(i)(3)(F)(iii).

5         Along with her motion and reply, LaToya A. submitted her counsel's contemporaneous time

6    records which document her counsel's time entries for hours worked from August 18, 2014 and

7    ending on December 31, 2015. (*See* Hodes Decl., ECF No. 6, Ex. B; Adams Reply Decl., ECF No.

8    26-1, Ex. 1.) According to those records, attorney Jean Murrell Adams billed 37.6 hours, attorney

9    Gail Hodes billed 186.8 hours, paralegal/translator Alba Ojeda billed 4.0 hours, clerical support

10   provider Fabian Lopez billed 1.0 hours, legal assistant/secretary Karla Rosales billed 3.9 hours,

11   paralegal/office manager Wendy Kraal billed 6.3 hours, and non-attorney advocate Stephen Maher

12   billed 4.0 hours. The District contends that the hours must be reduced for several reasons.

13   (Opposition, ECF No. 24 at 15-20.)

14        First, the District argues that LaToya A. cannot recover fees incurred before she filed her

15   request for a due-process hearing on December 12, 2014. (*Id.* at 15-16.) But time spent "on the

16   litigation," even if it occurs before an initiating document is filed, is compensable. *See Webb v.*

17   *Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985) ("Of course, some of the services

18   performed before a lawsuit is formally commenced by the filing of a complaint are performed "on

19   the litigation." Most obvious examples are the drafting of the initial pleadings and the work

20   associated with the development of the theory of the case."). That said, the District's narrower

21   objection—that LaToya A. cannot recover fees incurred for work performed during August,

22   September, and November 2014 (no work was done in October)—is fair. The time entries during

23   these months reflect work related to LaToya A.'s claims against the West Contra Costa County

24   School District and the Antioch Unified School District and not related to her claims against the

25   District. As the District states, LaToya A. did not enroll I.A. in the District until September 22,

26   2014, and she did not have had a claim against the District until after the October 22, 2014 Section

27   504 meeting. (Opposition, ECF No. 24 at 16.) From the time entries, LaToya A.'s counsel's work

28   against the District began on December 1, 2014, eleven days before she filed her request for a due-

ORDER (No. 3:15-cv-04311-LB)            12

1   process hearing against it. The court concludes that LaToya A. cannot recover attorneys' fees for

2   the 2.1 hours billed before December 1, 2014: Ms. Adams (0.1 hours); Alba Ojeda (1.6 hours);

3   Fabian Lopez (0.1 hours); and Karla Rosales (0.3).

    The District further contends that any hours spent working on matters involving all three

5   school-district defendants should be reduced by two-thirds. (*Id.*) "For instance," the District

6   writes, "there are several entries that pertain to the preparation and filing of the Due Process

7   Request, which was pled against all three districts, and included discrete factual and legal

8   allegations against each. There are also entries regarding the mediation attended by all three

9   districts." (*Id.* (citing time entries dated November 6, December 1-5, December 8-9, December 12,

10  and December 16, 2014, and those dated January 14-16 and January 20, 2015).) The District,

11  however, does not cite to any legal authority for the proposition that time spent on a complaint

12  against multiple defendants should be reduced when some of those defendants settle with the

13  complaining party. It also is not clear that the time spent on these dates was spent equally between

14  all three defendants. The court does not reduce these hours as the District proposes.

    Second, the District contends that LaToya A. cannot recover fees incurred in relation to the

16  District's "own due process case against [her] when she refused to consent to the initial eligibility

17  evaluation that she had requested in her [request for a due-process hearing]." (*Id.* at 15-16 (citing

18  time entries dated January 7, January 14-15, January 21-23, January 26, February 2, and February

19  6, 2015).) The District has not met its burden on this item. There is almost nothing in the record

20  about this other "due process case." The District does not include it in the otherwise detailed

21  "Factual Background and Procedural History" section in its opposition. (*See id.* at 6-9.) Instead, it

22  is mentioned briefly in two paragraphs in the Declaration of Damara Moore, an attorney for the

23  District. (*See* Moore Decl., ECF No. 24-5 at 3, ¶¶ 8-9.) Still, the District's "own due process case"

24  clearly was in response to LaToya A.'s request for a due-process hearing and (the court concludes

25  on this record) appears factually and legally intertwined with it. The District also cites no authority

26  supporting the reduction of hours spent on such a related counterclaim-like matter. The court thus

27  does not reduce the hours on this basis. (The court recognizes that the District raised the issue at

28  the hearing; the court thinks it is fair to rest its conclusions on the record submitted with the briefs.

United States District Court
Northern District of California

1        Third, the District challenges some of LaToya A.'s counsel's hours on the grounds that they

2   are vague, "block-billed," or excessive. (Opposition, ECF No. 24 at 17; Suppl. Levine Decl., ECF

3   No. 28 at 2-3, ¶¶ 4-5, & Ex. 1.) The District submitted two spreadsheets of LaToya A.'s counsel's

4   time entries and which contain the District's objections to specific entries. (*See* Levine Decl., ECF

5   No. 24-1, Ex. 1; Suppl. Levine Decl., ECF No. 28, Ex. 1.) Between the two spreadsheets, the

6   District contends that 11 time entries are vague and 65 time entries are block-billed. It also

7   contends that there were nine instances of excessive billing.

8        While an attorney "is not required to record in great detail how each minute of his time was

9   expended," he or she should at least "identify the general subject matter of his time expenditures."

10  *Hensley*, 461 U.S. at 437 n.12. *See also Hawkins*, 2008 U.S. Dist. LEXIS 94673, at *42-43

11  (applying this "liberal standard"). And block billing—which the Ninth Circuit defines as "the

12  method by which each lawyer and legal assistant enters the total daily time spent working on a

13  case, rather than itemizing the time expended on specific tasks," *Welch v. Metropolitan Life Ins.

14  Co.*, 480 F.3d 942, 945 n.2 (9th Cir. 2007) (citation omitted)—"is not inappropriate per se when

15  the party seeking fees meets the basic requirements of 'listing his hours and identifying the general

16  subject matter of his time expenditures,'" *Garcia v. Resurgent Capital Servs., L.P.*, No. C-11-1253

17  EMC, 2012 WL 3778852, at *8 (N.D. Cal. Aug. 30, 2012) (quoting *Fischer*, 214 F.3d at 1121).

18       The court reviewed the 11 allegedly vague time entries and the 65 allegedly block-billed time

19  entries and finds that the District's complaints about them do not warrant reducing the fees. Most

20  of the complaints about vagueness involve entries for time spent conducting "legal research re

21  hearing issues," or "legal research." Standing alone, these could seem vague. But when viewed in

22  context, both with respect to other descriptions within the same time entries or other time entries

23  on the same or next day, the entries sufficiently identify how the time was spent. For instance, Ms.

24  Hodes conducted "legal research re hearing issues" on May 18, 2015 and conducted more "legal

25  research" on May 22, 2015. This research was done after the ALJ heard the matter but before the

26  parties submitted their closing briefs. It is clear that Ms. Hodes conducted legal research regarding

27  issues that arose during the hearing and which she may have addressed in LaToya A.'s closing

28  brief. The court does not believe that Ms. Hodes needed to identify the specific legal question she

1    researched, and the District cites to no authority holding otherwise. The other allegedly vague time

2    entries the district complaints about can similarly be understood by looking at the time entries in

3    context. Accordingly, the court does not reduce any of the hours for being too vaguely described.

4         When viewed in context, the 65 allegedly block-billed entries do not warrant a fee reduction.

5    In the rare instances where an attorney entered the total daily time spent working on a case, it was

6    for tasks that took all day. For example, on January 20, 2015, Ms. Hodes billed 8 hours for

7    "Prepar[ing] for, travel[ing] to, and attend[ing] mediation," and on May 7, 2015, she billed 10.3

8    hours for "Prepar[ing] for, travel[ing] to, and attend[ing] DPH" (presumably the due-process

9    hearing). These are all-day events, and it is clear what was being done and for how long. Ms.

10   Hodes need not have broken down these days into further increments. Most of the other instances

11   of block-billing are for much shorter lengths of time; many are for under 2.0 hours, and some are

12   for as little as 0.2 hours. For instance, on August 3, 2015, Ms. Adams spent 0.5 hours "Meet[ing]

13   and confer[ring] via phone with [District counsel] D. Moore and updat[ing the] assigned attorney

14   re case status." The District calls this block-billing, but the court discerns no value in requiring

15   Ms. Adams to further articulate a breakdown between phone call and update, especially with such

16   small increments of time. In short, LaToya A.'s counsel did not block-bill in a way that constituted

17   a failure to identify the general subject matter of the time expenditure; the court does not reduce

18   the hours on this basis.

19        As for the District's complaint that some of the work was excessive, "[a] district court should

20   also exclude from the lodestar fee calculation any hours that were not 'reasonably expended,' such

21   as hours that are excessive, redundant, or otherwise unnecessary." *Rodriguez v. Barrita, Inc.*, 53 F.

22   Supp. 3d 1268, 1281 (N.D. Cal. 2014) (citing *Hensley*, 461 U.S. at 433-34). The District criticizes

23   Ms. Hodes for spending 4.5 hours on January 27, 2015 to "Draft Amended [request for due-

24   process hearing]" and conduct "legal research re same," and then spending part of 3.8 hours on

25   January 29, 2015 working on the amended request. It also criticizes her for spending 2.2 hours on

26   December 30, 2015 drafting and revising her declaration in support of LaToya A.'s reply in

27   support of her motion for summary judgment. The District says this is too long on such tasks, but

28   the court cannot conclude that it was excessive, especially given that LaToya A. prevailed on most

United States District Court
Northern District of California

1    issues. *See Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) ("By and large, the

2    court should defer to the winning lawyer's professional judgment as to how much time he was

3    required to spend on the case; after all, he won, and might not have, had he been more of a

4    slacker."); *Rodriguez*, 53 F. Supp. 3d at 1284 (declining to question the reasonableness of the time

5    spent on certain motions). Accordingly, the court does not reduce these hours as excessive.

6        Fourth, the District argues that 25 time entries reflect "clerical work" that is not compensable.

7    (Opposition, ECF No. 24 at 18-19.) Work that is "clerical in nature" should be "subsumed in firm

8    overhead rather than billed at paralegal rates." *Nadarajah v. Holder*, 569 F.3d 906, 921 (9th Cir.

9    2009); *see also Missouri v. Jenkins ex rel. Agyei*, 491 U.S. 274, 288 n.10 (1989) ("[P]urely clerical

10   or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them.").

11   "When clerical tasks are billed at hourly rates, the court should reduce the hours requested to

12   account for the billing errors." *Nadarajah*, 569 F.3d at 921. In *Nadarajah*, the activities considered

13   clerical were filing, obtaining transcripts, and document organization. *Id.*

14       LaToya A. states that "[i]n keeping with recent fee award decisions, the time attributable to

15   overhead costs and purely clerical or secretarial tasks have not been billed and the customary

16   billing rates of support staff have been reduced." (Reply, ECF No. 26 at 6.) The billing records do

17   reflect that some purely clerical work, such as mailing copies of documents to LaToya A. or

18   forwarding documents to one of the attorneys, has been omitted. And some of the other time

19   entries reflect work that is more legal in nature than the District suggests. For example, many of

20   the time entries that the District describes as clerical involve paralegals conducting client intake,

21   drafting and sending requests to the school districts for records, drafting declarations, and

22   preparing binders of exhibits for hearings. These entries document work that is closer to paralegal

23   work than purely clerical work. *Cf. Yates v. Vishal Corp.*, No. 11-cv-00643-JCS, 2014 WL

24   572528, at *6 (N.D. Cal. Feb. 4, 2014) (finding tasks such as posting letters for mail,

25   photocopying, three-hole punching, internal filing, calendaring, and preparing the summons and

26   complaint for filing to be "purely clerical"). The Supreme Court has characterized many of these

27   tasks as legal (not clerical) and capable of being performed by a paralegal:

28       It has frequently been recognized in the lower courts that paralegals are capable of

United States District Court
Northern District of California

carrying out many tasks, under the supervision of an attorney, that might otherwise be performed by a lawyer and billed at a higher rate. Such work might include, for example, factual investigation, including locating and interviewing witnesses; assistance with depositions, interrogatories, and document production; compilation of statistical and financial data; checking legal citations; and drafting correspondence. Much such work lies in a gray area of tasks that might appropriately be performed either by an attorney or a paralegal.

*Jenkins*, 491 U.S. at 288 n.10. Still, some entries are, under the applicable case law, clerical work. This includes time spent preparing proofs of service, "process[ing] records, filing documents, and calendaring deadlines. The court discounts fees for 4.6 hours spent doing clerical work: Mr. Lopez (0.8 hours); Ms. Rosales (1.3 hours); and Wendy Kraal (2.5 hours).

Fifth, the District contends that hours spent attending IEP meetings must be omitted. (Opposition, ECF No. 24 at 19-20.) Under IDEA, "[a]ttorneys' fees may not be awarded relating to any meeting of the IEP Team unless such meeting is convened as a result of an administrative proceeding or judicial action, or, at the discretion of the State, for a mediation described in [20 U.S.C. § 1415(e)]." 20 U.S.C. § 1415(i)(3)(D)(ii). LaToya A. says that the District convened an IEP meeting only "in response to" her request for a due-process hearing, so her fees relating to it are not barred. But the Seventh Circuit has interpreted this provision as "prohibit[ing] recovery of fees associated with IEP meetings unless the meeting is convened by order of a court or administrative agency." *Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 709 (7th Cir. 2005); *see also Jeremiah B. Dep't of Educ.*, No. 09-00262 DAE-LEK, 2010 WL 346454, at *5 (D. Haw. Jan. 29, 2010) (following the Seventh Circuit's interpretation). The court follows the Seventh Circuit's interpretation and concludes that because the ALJ did not order the parties to attend an IEP meeting, LaToya A cannot recover fees relating to the April 2015 IEP meeting. Accordingly, the court excludes the 0.6 hours that Ms. Hodes billed for it.

The District also contends that LaToya A. cannot recover fees in relation to a "resolution session" that occurred on December 23, 2014. (Opposition, ECF No. 19-20.) Under IDEA, "[a] meeting conducted pursuant to subsection (f)(1)(B)(i) shall not be considered—(I) a meeting convened as a result of an administrative hearing or judicial action; or (II) an administrative hearing or judicial action for purposes of this paragraph." 20 U.S.C. § 1415(i)(3)(D)(iii). 20 U.S.C. § 1415(f)(1)(B)(i) provides that

Prior to the opportunity for an impartial due process hearing under subparagraph (A), the local educational agency shall convene a meeting with the parents and the relevant member or members of the IEP Team who have specific knowledge of the facts identified in the complaint—

(I)   within 15 days of receiving notice of the parents' complaint;

(II)  which shall include a representative of the agency who has decisionmaking authority on behalf of such agency;

(III) which may not include an attorney of the local educational agency unless the parent is accompanied by an attorney; and

(IV)  where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint;

unless the parents and the local educational agency agree in writing to waive such meeting, or agree to use the mediation process described in subsection (e).

LaToya A. admits in her reply that attorneys' fees may not be awarded for time spent in relation to an early resolution session, but she contends that she still may recover costs associated with it. (Reply, ECF No. 26 at 7.) She then cites as a cost the 4.0 hours spent by non-attorney advocate Stephen Mayer on December 23, 2015. (*Id.*) But that is not a cost and instead seems akin to attorneys' fees. The court excludes all fees relating to the December 23, 2014 resolution session: Mr. Mayer (4.0 hours); Ms. Hodes (1.0 hours); and Ms. Ojeda (0.5 hours).

Sixth, the District argues that all of the hours spent travelling should be excluded or, if included, awarded at a reduced rate. (*Id.* at 20.) Travel time, however, is compensable. *Johnson v. CFS II, Inc.*, No. 14-15094, 2016 WL 25468, at *1 (9th Cir. Jan. 4, 2016) ("An attorney's travel time is compensable . . . .") (citing *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1216 (9th Cir. 1986)). In addition, as a general matter, "courts in this Circuit do not compensate travel time at a lower rate than time billed for other tasks, so long as the travel time is considered reasonable." *Pearson v. Green Tree Servicing, LLC*, No. 14-cv-04524-JSC, at *9 (N.D. Cal. Feb. 13, 2015) (collecting cases). The court finds the time billed for travel time is reasonable. Accordingly, the court does not exclude any hours billed as travel time.

Based on the reductions and exclusions described above, the reasonable hours spent total 243.60, and can be broken down as follows:

Ms. Adams: 37.5 hours

United States District Court
Northern District of California

1    Ms. Hodes: 185.2 hours

2    Ms. Ojeda: 1.9 hours

3    Mr. Lopez: 0.1 hours

4    Ms. Rosales: 2.3 hours

5    Mr. Mayer: 0.0 hours

6    Ms. Krall: 3.8 hours.

7    **3.2   Reasonable Hourly Rate**

8        LaToya A. seeks attorneys' fees and costs for work done by two attorneys and several of the

9    attorneys' staff members. (Motion, ECF No. 6 at 8-9.) The District challenges the hourly rates for

10   each of them. (Opposition, ECF No. 24 at 20-23.) The court addresses each in turn below.

11       **3.2.1.   Ms. Adams and Ms. Hodes**

12       LaToya A. submits that a reasonable hourly rate for her attorney Jean Murrell Adams is $450

13   and that a reasonable hourly rate for her attorney Gail Hodes is $350-$375. (Motion, ECF No. 6 at

14   8.) The District contends that these rates are excessive and proposes that $300-$400 is a

15   reasonable rate for Ms. Adams and $225-$300 is a reasonable rate for Ms. Hodes. (Opposition,

16   ECF No. 24 at 22.)

17       Attorneys' fees awarded under IDEA must be "based on rates prevailing in the community in

18   which the action or proceeding arose for the kind and quality of services furnished." 20 U.S.C. §

19   1415(i)(3)(C). *See also Sam K. ex rel. Diane C. v. Hawaii Dep't of Educ.*, 788 F.3d 1033, 1041

20   (9th Cir. 2015) ("Reasonable attorney's fees are to be calculated according to 'the prevailing

21   market rates in the relevant community.'") (quoting *Van Skike v. Dir., Office of Workers*

22   *Compensation Programs*, 557 F.3d 1041, 1046 (9th Cir. 2009)). But "whenever the court finds

23   that . . . the amount of the attorneys' fees otherwise authorized to be awarded unreasonably

24   exceeds the hourly rate prevailing in the community for similar services by attorneys of reasonably

25   comparable skill, reputation, and experience[,] . . . the court shall reduce, accordingly, the amount

26   of the attorneys' fees awarded under this section." 20 U.S.C. § 1415(i)(3)(F)(ii).

27       "The burden is on the fee applicant 'to produce satisfactory evidence' of the prevailing market

28   rates." *Sam K.*, 788 F.3d at 1041 (quoting *Van Skike*, 557 F.3d at 1046). "District courts may

United States District Court
Northern District of California

consider the fees awarded by others in the same locality for similar cases." *Id.* (citing *Moreno v. City of Sacramento*, 534 F.3d 1106, 1115 (9th Cir. 2008)). "District courts may also use their 'own knowledge of customary rates and their experience concerning reasonable and proper fees.'" *Id.* (quoting *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011)).

Ms. Adams has been a practicing attorney since 1986. (Adams Decl., ECF No. 6-4 at 4, ¶ 10.) From that time until 2002, she held a variety of litigation and in-house positions. (*Id.* at 4-5, ¶¶ 11-13.) In 2002, she founded ADAMS ESQ to represent parents of children who need special education services. (*Id.* at 5-6, ¶ 14.) Since then, her firm has represented over 2,000 parents and children in administrative cases. (*Id.*) In her declaration, she cited to three courts that have upheld her then-current hourly rates as reasonable. (*Id.* at 8, ¶ 20.) In 2008, a court in this District concluded that Ms. Adams's rate of $390 per hour was reasonable. *Hawkins*, 2008 U.S. Dist. LEXIS 94673, at *32. In 2014, a court in the District of Nevada found Ms. Adams's rate of $410 per hour to be reasonable. *Y.Z. v. Clark Cnty. Sch. Dist.*, 54 F. Supp. 3d 1171, 1181 (D. Nev. 2014). And in 2015, a court in the Central District of California also found Ms. Adams's rate of $410 per hour to be reasonable. *ADAMS ESQ. v. Compton Unified Sch. Dist.*, No. 2:14-cv-04753-BRO-PJW, Dkt. No. 68 at 20 (C.D. Cal. July 16, 2015). In that case, Ms. Adams had asked for a rate of $450 per hour but the court found it to be unreasonable and reduced the rate to $410 per hour because she did not increase her hourly rate from $410 per hour to $450 per hour until March 2014, and the majority of her billable hours for that particular case were from before then. (*Id.*)

Based on the record, the court finds that $410 per hour (not $450) is the reasonable rate for Ms. Adams. As other courts have noted, she has substantial experience both with litigation generally and with special-education cases specifically. *See Y.Z.*, 54 F. Supp. 3d at 1181; *Hawkins*, 2008 U.S. Dist. LEXIS 94673, at *32. And while, as the District notes, the two most recent decisions approving Ms. Adams's $410 hourly rate were issued by courts outside of this District and community, they nevertheless are relevant to determining the prevailing market rates. *See ADAMS ESQ.*, No. 2:14-cv-04753-BRO-PJW, Dkt. No. 68 at 20 n.9 (acknowledging that "attorney hourly rates are often higher [in San Francisco] than in Los Angeles" and, in turn, "it is common knowledge that Los Angeles attorneys typically command a much higher hourly rate than

Nevada attorneys") (citing *Meguerditchian v. Aetna Life Ins. Co.*, No. 2:12-CV-10999-ODW, 2014 WL 3926805, at *4 (C.D. Cal. Aug. 12, 2014) and *Van Asdale v. Int'l Game Tech.*, No. 3:04-CV-703-RAM, 2010 WL 1490349, at *9 (D. Nev. Apr. 13, 2010)). Ms. Adams does not cite to any instances where a court found $450 to be a reasonable rate for the practice of special-education law in this or any other District.

The District also points out that LaToya A. submitted the declarations of two other attorneys who have substantial experience with special-education cases, but those attorneys, who opine that Ms. Adams's $450 hourly rate is reasonable[2], charge lower hourly rates than Ms. Adams. For instance, Sheila Brogna, who has practiced special-education law in northern California for about 25 years, charges between $300 to $400 per hour (or, between $150 to $50 less per hour than Ms. Adams charges). (Brogna Decl., ECF No. 6-6 at 2, ¶¶ 2-3.) In addition, Natashe Washington, who has been a litigator since 1995 and has practiced special-education law since 2009, charges $410, (Washington Decl., ECF No. 6-5 at 2, ¶ 8), but the District notes that in 2013 a court in this District found her reasonable hourly rate to be $325, s*ee G.R. v. Brentwood Union Sch. Dist.*, No. 12-cv-06326-JST, 2013 WL 3369259, at *4 (N.D. Cal. July 5, 2013). Finally, the District cites cases issued, albeit a few years ago, by courts in this District and the Eastern District of California that approved much lower hourly rates for attorneys practicing in the special-education field. *See M.M. v. Lafayette Sch. Dist.*, Nos. CV 09-4624, 10-04223, 2012 WL 3257662, at *13 (N.D. Cal. Aug. 8, 2012) ($300 per hour for an attorney who had practiced special- education law since 1997); *S.A. v. Patterson Joint Unified Sch. Dist.*, No. 1:10-cv-00943-OWW-SKO, 2010 WL 3069204, at *11 (E.D. Cal. Aug. 2, 2010) ($275 per hour for an attorney who had been an attorney for seven years and practiced special-education law for five years); *J.C. v. Vacaville Unified Sch. Dist.*, No. CIV. S-05-0092 FCD KJM, 2007 WL 112138, at *4 (E.D. Cal. Jan. 10, 2007) ($300 per

---

[2] The Ninth Circuit recently criticized the use of other attorneys' opinions about what a reasonable rate is because what other attorneys may think is a reasonable rate "does not necessarily say what the prevailing market rates actually are." *Sam K.*, 788 F.3d at 1041. "This is especially true," the court continues, "when the opinion[s] are expressed by attorneys whose own professional interests might motivate them to favor higher rates." *Id.* For this reason, Ms. Brogna's and Ms. Washington's opinions about the reasonableness of Ms. Adams's hourly rate do not alter the conclusion here.

hour for two law firm partners).

In sum, considering Ms. Adams's experience, these authorities, and the fact that attorneys in San Francisco attorneys generally are able to charge higher rates than those outside of San Francisco, the court finds that a reasonable rate for her services in this case is $410 per hour, not $450 per hour.

As for Ms. Hodes, she has been a practicing attorney since 1988. (Hodes Decl., ECF No. 6 at 13, ¶ 4.) After handling plaintiff-side employment-discrimination litigation and criminal-defense work for nearly two decades, she joined ADAMS ESQ in 2011, where she has worked on more than 70 special-education cases. (*Id.* at 13-14, ¶¶ 5-7.) She consults with Ms. Adams on some cases but otherwise manages her own cases. (*Id.* at 15, ¶ 7.) In 2010, before she joined ADAMS ESQ, she says that Alameda County Superior Court Judge Gordon Baranco approved her hourly rate of $325 in *Hill v. BART*, No. RG04172014, a race-discrimination and retaliation action. (*Id.* at 17, ¶ 16.)

The court finds Ms. Hodes's requested rate of $350-$375 per hour to be excessive. Although she has practiced law since 1988, she has substantially less experience with special-education cases than Ms. Adams. And even if her $325 per hour rate was approved in 2010, it was approved for work as an employment attorney, not as a special-education attorney. Moreover, in one case cited by the District, a court approved hourly rates for similarly experienced attorneys that were lower than the rate Ms. Hodes seeks here. *See G.R.*, 2013 WL 3369259, at *4 ($325 per hour for an attorney who had practiced special-education law for five years and $250 for an attorney who had practiced special-education law for two years). Considering Ms. Hodes's experience and the relevant authorities, the court finds that a reasonable rate for her services in this case is $300 per hour, not $350-$375 per hour.

### 3.2.2   ADAMS ESQ. Staff

LaToya A. submits that the following hourly rates are reasonable for the staff members at ADAMS ESQ who worked on her case: Alba Ojeda, a paralegal/translator, at $190 per hour; Fabian Lopez, a clerical support provider, at $150 per hour; Karla Rosales, a legal assistant/secretary, at $150 per hour; Stephen Maher, a non-attorney advocate, at $225 per hour;

1    and Wendy Kraal, a paralegal/office manager, at $190 per hour. (*See* Motion, ECF No. 6 at 9;

2    Adams Decl., ECF No. 6-4 at 8-11, ¶ 22.) The District contends that all of these rates are

3    unreasonably high. (Opposition, ECF No. 24 at 23.) It says that LaToya A. submitted no evidence

4    to support these rates. (*Id.*) It proposes a rate of $100 per hour for any paralegal work. (Id.)

5        The court agrees with the District because LaToya A. has not met her burden to "'to produce

6    satisfactory evidence' of the prevailing market rates." *Sam K.*, 788 F.3d at 1041 (quoting *Van*

7    *Skike*, 557 F.3d at 1046). She makes no mention of any of her staff members' hourly rates in her

8    motion or reply. In her motion, she makes only the following statement: "As reflected in the

9    timesheets attached to the Declaration of Ms. Adams, the work done by paralegals and legal

10   assistants is reasonable and should be compensated." (Motion, ECF No. 6 at 9 (citing *ADAMS*

11   *ESQ.*, No. 2:14-cv-04753-BRO-PJW, Dkt. No. 68 at 20 n.9 (noting that Ms. Adams "did not

12   submit sufficient evidence demonstrating that [her proposed rates] are prevailing rates for

13   paralegals, legal assistants, and office managers in the community and lowering Alba Ojeda's,

14   Fabian Lopez's, Karla Rosales's, and Wendy Kraal's hourly rates to $190, $150, $150, and $150

15   per hour, respectively); *Hawkins*, 2008 U.S. Dist. LEXIS 94673, at *32 (approving rates of $140

16   to $190 per hour for Ms. Adams's staff but noting that the district did not contest the rates)).) The

17   staff members did not submit declarations; instead, Ms. Adams described in her declaration her

18   staff members' professional experience, and she did not provide any statements about why their

19   rates are the prevailing rates in the community for the type of work done. (*See* Adams Decl., ECF

20   No. 6-4 at 8-11, ¶ 22.) In her reply, LaToya A. did not respond to the District's challenge to Ms.

21   Adams's staff members' hourly rates. (*See* Reply, ECF No. 26 at 9.) In light of LaToya A.'s

22   failure to meet her burden and failure to respond to the District's argument on this point, the court

23   finds that a reasonable rate for all of ADAMS ESQ.'s staff members is $100 per hour.

24                              *       *       *

25       With the reasonable hours and the reasonable hourly rates determined, the court now calculates

26   the lodestar. Multiplying each individual's reasonable hours times that individual's reasonable

27   hourly rate yields the following reasonable attorneys' fees:

28       Ms. Adams: $15,375 ($410 per hour times 37.5 hours)

1   Ms. Hodes: $55,560 ($300 per hour times 185.2 hours)

2   Ms. Ojeda: $190 ($100 per hour times 1.9 hours)

3   Mr. Lopez: $10 ($100 per hours times 0.1 hours)

4   Ms. Rosales: $230 ($100 per hour times 2.3 hours)

5   Mr. Mayer: $0 ($100 per hour times 0.0 hours)

6   Ms. Krall: $380 ($100 per hour times 3.8 hours).

7   The sum of these amounts is $71,745, the lodestar amount.

8   **4.    Reduction for Partial Success**

9       "The product of reasonable hours times a reasonable rate does not end the inquiry," however.

10  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983). For instance, where "a plaintiff has achieved only

11  partial or limited success, the product of hours reasonably expended on the litigation as a whole

12  times a reasonable hourly rate may be an excessive amount." *Id.* at 436. In such a situation, the

13  Supreme Court has stated that a district court has equitable discretion to reduce the attorneys' fees

14  awarded. *Id.* at 436-37. When a district court considers whether to do so, the "most critical" factor

15  is the "degree of success obtained." *Id.* at 436. "There is no precise rule or formula for making

16  [this] determination[ ]. The district court may attempt to identify specific hours that should be

17  eliminated, or it may simply reduce the award to account for the limited success." *Id.* at 436-37.

18      *Hensley*'s "degree of success" standard applies to attorneys' fee awards under IDEA, *Aguirre

19  v. Los Angeles Unified Sch. Dist.*, 461 F.3d 1114, 1115 (9th Cir. 2006), and the District argues that

20  LaToya A.'s fee request should be reduced to reflect that she did not prevail on all of the issues

21  before the ALJ and achieved only partial success on the issues she did prevail on. (Opposition,

22  ECF No. 24 at 12-15.) When determining whether to reduce the attorneys' fees sought by a

23  prevailing party who achieved only partial success, the Ninth Circuit, following *Hensley*, instructs

24  district courts to apply the following two-step analysis:

25          First, the court asks whether the claims upon which the plaintiff failed to prevail
           were related to the plaintiff's successful claims. If unrelated, the final fee award
26         may not include time expended on the unsuccessful claims. *Hensley*, 461 U.S. at
           434-35, 103 S. Ct. at 1939-40. If the unsuccessful and successful claims are related,
27         then the court must apply the second part of the analysis, in which the court
           evaluates the "significance of the overall relief obtained by the plaintiff in relation
28         to the hours reasonably expended on the litigation." *Id.* at 435, 103 S. Ct. at 1940. If

1  the plaintiff obtained "excellent results," full compensation may be appropriate, but
2  if only "partial or limited success" was obtained, full compensation may be
   excessive. Such decisions are within the district court's discretion. *Id.* at 435-37,
   103 S. Ct. at 1940-41.

3  *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir. 1986).

4      For the first step, the court finds that the fourth issue—whether the District denied I.A. a FAPE

5  by violating LaToya A.'s procedural rights by failing to provide a full and complete copy of I.A.'s

6  educational records pursuant to her request on December 2, 2014—was related to the first three

7  issues on which LaToya A.'s prevailed. As the Ninth Circuit has stated, "[t]he test for relatedness

8  of claims is not precise. However, related claims will involve "a common core of facts" or will be

9  based on related legal theories, while unrelated claims will be 'distinctly different,' and based on

10 different facts and legal theories." *Thorne*, 802 F.2d at 1141 (internal citations omitted) (quoting

11 *Hensley*, 461 U.S. at 434, 435). All four issues involve the District's conduct with respect to I.A.

12 and relate to whether I.A. needed special education services. They are not distinctly different. *See*

13 *Hawkins v. Berkeley Unified Sch. Dist.*, 250 F.R.D. 459, 467 (N.D. Cal. 2008) (applying *Hensley*

14 and finding a parent's claim that the school district "denied the student a FAPE by failing to

15 completely and timely produce his education records upon her request" to be related to her claim

16 that the district "denied the student a FAPE by failing to provide placement and services to meet

17 his unique needs and reasonably calculated to provide some educational benefit in conformity with

18 the IEP").

19     As for the second step, the court finds that LaToya A. achieved only partial success. First, she

20 did not prevail on the fourth issue. She attempts to downplay this fact by emphasizing that she did

21 not present any evidence on this issue during the administrative hearing and therefore did not

22 "actually litigate" it, but this does not change that fact that it was part of request for a due-process

23 hearing and therefore was a part of her case. The issue was not disposed of before the hearing, and

24 the ALJ analyzed it and ruled in favor of the District. Second, while LaToya A. prevailed on three

25 issues and the ALJ found that the District committed procedural violations, the ALJ also

26 determined that the procedural violations had been cured and did not deprive I.A. of any

27 educational benefit. The ALJ also did not order the District to change anything with respect to

28 I.A.'s IEP specifically or I.A.'s learning environment generally. To reflect this less than complete

United States District Court
Northern District of California

1    victory, the court finds that LaToya A.'s attorneys' fees should be reduced by 20%. Numerous

2    courts have reduced attorneys' fees awards in this way. *See ADAMS ESQ.*, No. 2:14-cv-04753-

3    BRO-PJW, Dkt. No. 68 at 25 (30%); *Rodriguez*, 53 F. Supp. 3d at 1290-91 (20%); *L.R. v.*

4    *Hollister Sch. Dist.*, No. 5:13-mc-80085-EJD, 2014 WL 1118019, at *6 (N.D. Cal. Mar. 19, 2014)

5    (50%); *G.R.*, 2013 WL 3369259, at *5 (33%); *M.M.*, 2012 WL 3257662, at *11 (75% and 90%);

6    *S.A.*, 2010 WL 3069204, at *13 (30%).

7        Accordingly, LaToya A. is entitled to $57,396 ($71,745 times 0.8) in reasonable attorneys'

8    fees.

9    **5.  Costs**

10       Although she does not explicitly argue for them, LaToya A. also appears to seek costs in the

11   amount of $7,396.00 (*See* Hodes Decl., ECF No. 6, Ex. B; Adams Reply Decl., ECF No. 26-1, Ex.

12   1.) In her motion, LaToya A. did not describe why these costs are reasonable. (*See generally*

13   Motion, ECF No. 6.) In its opposition, the District highlighted this fact and argued that many of

14   them are not reasonable and are not recoverable as costs under IDEA. (Opposition, ECF No. 24 at

15   27.) In her reply, LaToya A. did not respond to the District's arguments and once again did not say

16   anything about her costs. (*See generally* Reply, ECF No. 26.) The court concludes that she has not

17   met her burden to show that the costs are reasonable and that she is entitled to recover them.

18                                          **CONCLUSION**

19       The court grants in part LaToya A.'s motion for summary judgment and awards her $57,396 in

20   reasonable attorneys' fees.

21       **IT IS SO ORDERED.**

22       Dated: January 28, 2016

23                                                        _____

24                                                        LAUREL BEELER
                                                          United States Magistrate Judge
25

26

27

28

United States District Court
Northern District of California